JARED BOBROW (Bar No. 133712)
*jared.bobrow@weil.com*
YEN NGUYEN (Bar No. 239095)
*titi.nguyen@weil.com*
ARJUN MEHRA (Bar No. 267918)
*arjun.mehra@weil.com*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA   94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DOUG MCCLELLAN (admitted *pro hac vice*)
*doug.mcclellan@weil.com*
MELISSA HOTZE (admitted *pro hac vice*)
*melissa.hotze@weil.com*
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX   77002
Telephone:   (713) 546-5000
Facsimile:   (713) 224-9511

Attorneys for Plaintiff
CISCO SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TIVO INC., <br><br> Defendant. | Case No. CV 12-02766 RS <br><br> **PLAINTIFF CISCO SYSTEMS, INC.'S OPPOSITION TO TIVO INC.'S MOTION TO DISMISS OR TRANSFER** <br><br> Hearing:   July 26, 2012 at 1:30 p.m. |

1

**TABLE OF CONTENTS**

2 I.     INTRODUCTION ................................................................................................1

3 II.    BACKGROUND .................................................................................................4

4      A.    Cisco's Declaratory Judgment Action Is The First-Filed Suit ................4

5      B.    TiVo First Asserted Two of the Patents-In-Suit In This District ............4

6      C.    The Texas TiVo Actions Previously Handled by Judge Folsom Involve Different Parties, Different Patents, and Different Accused Products ...................4

7

8      D.    Both Cisco And TiVo Have Strong Ties To This District, Where Their Headquarters Are Located ...................................................................6

9      E.    The Key Non-Party Witnesses Reside In The Northern District Of California ............................................................................................6

10

11 III.    THIS COURT SHOULD DENY TIVO'S MOTION UNDER THE FIRST-TO-FILE RULE .........................................................................................................7

12      A.    Cisco's Declaratory-Judgment Action Is The First-Filed Suit ...............8

13      B.    The Texas Actions Do Not Justify Dismissal Or Transfer Of Cisco's First-Filed Suit Because They Involve Different Parties, Different Patents, And Different Accused Products ...................................................................11

14

15           1.    TiVo Wrongly Asserts That Judicial Economy Is Served By Litigating In East Texas ...........................................................11

16

17           2.    The Cases TiVo Relies Upon To Argue For Transfer Based on Judicial Economy Are Distinguishable .......................................14

18      C.    TiVo Cannot Show Any Exception To Avoid The First-To-File Rule ..................16

19 IV.    THIS COURT ALSO SHOULD DENY TIVO'S MOTION BECAUSE THIS FORUM IS MORE CONVENIENT THAN THE EASTERN DISTRICT OF

20     TEXAS .............................................................................................................17

21      A.    The Private Factors Weigh Against Transfer From This District ..........18

22           1.    Relative Ease Of Access To Sources Of Proof Weighs Against Transfer ...............................................................................18

23

24           2.    The Availability Of Compulsory Process In California To Secure The Attendance Of Witnesses Strongly Weighs Against Transfer ...........20

25           3.    The Cost Of Attendance For Willing Witnesses Weighs Against Transfer ...............................................................................21

26

27           4.    The "Other Practical Problems" Factor Is Neutral .....................22

28      B.    The Public Interest Factors Weigh Against Transfer From The Northern District .........................................................................................23

1

C.    The Balance of Convenience Weighs Strongly Against Transfer ........................24

2    V.    CONCLUSION ............................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aliphcom v. Wi-LAN Inc.*,
   2010 U.S. Dist. LEXIS 123295 (N.D. Cal. Nov. 10, 2010).............................................. 15, 16

*Apotex Inc. v. Sanofji-Synthelabo*,
   286 F. Supp. 2d 549 (S.D.N.Y. 2005).................................................................................. 17

*Barnes & Noble, Inc. v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) ............................................................................ 17, 18

*Children's Network, LLC v. PixFusion LLC*,
   722 F. Supp. 2d 404 (S.D.N.Y. 2010).............................................................................. 13, 23

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (Ninth Cir. 1986).................................................................................. 18, 19, 23

*Florens Container v. Cho Yan Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) ............................................................................. 20

*Fujitsu Ltd. v. Tellabs, Inc.*,
   639 F. Supp. 2d 761 (E.D. Tex. 2009) ............................................................................... 20

*Genentech, Inc. v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993)............................................................................................. 7

*Google, Inc. v. Traffic Information, LLC*,
   2010 WL 743878 (D. Or. Feb. 2, 2011).................................................................... 12, 13, 23

*Horton Archery, LLC v. Am. Hunting Innovations, LLC*,
   No. 5:09CV1604, 2010 U.S. Dist. LEXIS 6699 (D. Ohio Jan. 27, 2010) ............................ 10

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)................................................................................ 21, 22, 24

*In re Biosearch Techs., Inc.*,
   452 Fed. Appx. 986 (Fed. Cir. 2011) .................................................................................. 22

*In re Funeral Consumers Antitrust Litg.*,
   2005 WL 2334362 (N.D. Cal. Sep. 23, 2005)...................................................................... 21

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)................................................................................ 20, 21, 22

*In re Hoffman-La Roche*,
   587 F.3d 1333 (Fed. Cir. 2009)................................................................................ 21, 23, 24

*In re Microsoft*,
    630 F.3d 1361 (Fed. Cir. 2010) ................................................................................. 21

*In re Morgan Stanley*,
    417 Fed. Appx. 947 (Fed. Cir. 2011) .................................................................. 16, 24

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ................................................................................. 21

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) .......................................................................... 20, 23

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011) ............................................................................ passim

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) ................................................................................. 15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................................... 21

*In re Volkswagen of Am., Inc.*,
    296 Fed. Appx. 11 (Fed. Cir. 2008) .......................................................................... 16

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ...................................... 21

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) .......................................................................... 16, 22

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1178 (Fed. Cir. 2010) ................................................................... 13, 17, 24

*Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*,
    2011 WL 1302633 (N.D. Cal. Apr. 5, 2011) ............................................................ 16

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ............................................................. 8, 9, 10

*Interwoven, Inc. v. Vertical Computer Sys., Inc.*,
    Nos. C 10-4645 RS and C 11-0189 RS, 2011 U.S. Dist. LEXIS 49428 (N.D. Cal. May
    2, 2011) ................................................................................................................ passim

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ................................................................................... 7

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................................. 18

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
    384 F.3d 1226 (Fed. Cir. 2004)...................................................................................... 8

*Microsoft Corp. v. Geotag Inc.*,
    --- F. Supp. 2d ---, 2012 WL 114128 (D. Del. 2012)...................................... 12, 13

*Newegg, Inc. v. Telecommunication Sys.*
    2009 W: 1914461 ................................................................................................ 20

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*,
    803 F. Supp. 971 (D. Del. 1992) .......................................................................... 15

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982)...................................................................................... 7

*Pepsi-Cola Bottling Co. of Pittsburgh, Inc. v. Pesico, Inc.*,
    2002 WL 922082 (D. Kan. May 2, 2002) .............................................................. 22

*Pergo, Inc. v. Alloc, Inc.*,
    252 F. Supp. 2d 122 (S.D.N.Y. 2003)............................................................... 13, 23

*PharmaNet, Inc. v. DataSci Ltd. Liability Co.*,
    2009 WL 396180 (D.N.J., Feb. 17, 2009)............................................................. 12

*Proofpoint, Inc. v. InNova Patent Licensing LLC*,
    2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17, 2011)................................... 9, 10, 11, 14

*Realtime Data LLC v. Morgan Stanley*,
    2010 WL 1064474 (E.D. Tex. Mar. 18, 2010)....................................................... 15

*Realtime Data, LLC v. Morgan Stanley*,
    2010 WL 4274576 (E.D. Tex. Oct. 28, 2010)........................................................ 16

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
    543 F. Supp. 2d 404 (E.D. Pa. 2008) .................................................................... 10

*Spread Spectrum Screening v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011).............................................................................. 11

*Stanley v. Novartis Pharms. Corp.*,
    2012 U.S. Dist. LEXIS 61713 (C.D. Cal. Apr. 13, 2012)........................................ 9

*Tegic Commc'ns Corp. v. Bd. of Regents*,
    458 F.3d 1335 (Fed. Cir. 2006).............................................................................. 18

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989)................................................................................. 17

*TiVo Inc. v. Dish Network Corp.*,
    640 F. Supp. 2d 853 (E.D. Tex. 2009) (Folsom, J)................................................. 4

1

2

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
2005 WL 6225413 (E.D. Tex. Aug. 18, 2005) (Folsom, J.) ........................................... 2, 4, 12

*Vertical Computer Sys., Inc. v. Interwoven, Inc.*,
No. 2:10-cv-00490-TJW, slip op. (E.D. Tex. May 10, 2011)................................................ 14

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Co.*,
402 F. Supp. 2d 731 (E.D. Tex. 2005) ................................................................................ 15

3

4

5

6 **OTHER AUTHORITIES**

7 Fed. R. Civ. P. 45(3) ................................................................................................................... 21

8

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
Procedure § 2851 .................................................................................................................. 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Cisco Systems, Inc. ("Cisco") submits this opposition to Defendant TiVo Inc.'s

2    ("TiVo") Motion To Dismiss Or Transfer (Dkt. 21).    TiVo's Motion asks this Court to disregard

3    Cisco's choice of forum even though Cisco filed this action where both Cisco's and TiVo's

4    headquarters are located and the key non-party witnesses reside.    Accordingly, TiVo's motion to

5    dismiss or transfer should be denied under the "first-to-file" rule and on the independent ground

6    that this forum is more convenient than the Eastern District of Texas under 28 U.S.C. § 1404.

7    **I.      INTRODUCTION**

8    Cisco is the world's leading innovator and supplier of digital video recorder ("DVR")

9    technology.   It has developed and sold numerous different models of DVRs (approximately

10   twenty) to many different customers, including dozens of cable and telecommunications

11   companies.   Cisco filed this suit due to TiVo's history of aggressively targeting downstream

12   service providers (rather than DVR suppliers) and the ongoing threat that TiVo would sue Cisco's

13   customers in a piecemeal fashion in multiple lawsuits.   By filing this suit, Cisco wanted to

14   ensure that all of TiVo's claims will be resolved against all of Cisco's DVRs in one suit, rather

15   than having TiVo file separate lawsuits on Cisco's DVRs against each of Cisco's many

16   customers.

17   Under the "first-to-file" rule, this suit—a declaratory judgment action that Cisco filed

18   against TiVo in this Court on May 30, 2012—is the first-filed suit.   It is the first suit between

19   Cisco and TiVo on any of TiVo's asserted patents.   It is the first suit that involves all of the

20   TiVo patents in dispute.   It is the first suit that involves all of the many different models of

21   DVRs that Cisco has supplied to numerous customers.    And when it was filed, it was the only

22   pending suit in which Cisco's alleged infringement of TiVo's patents was directly at issue.

23   While TiVo's motion focuses on earlier litigations in East Texas that involve different parties,

24   different subsets of patents, different issues, and different accused products, Cisco is not a party

25   to any of those cases, and none of those cases can resolve all of the disputes between Cisco and

26   TiVo that are at issue before this Court.

27   TiVo's response to this suit confirms that this suit is the first-filed case.    Five days after

28   Cisco filed this suit, TiVo filed a lawsuit that is a mirror-image of this case—but in Marshall,

---

CISCO'S OPPOSITION TO MOTION TO DISMISS OR
TRANSFER                                                                    Case No. C12-02766 RS

Texas, over 1,800 miles from TiVo's headquarters in Alviso, California.[1]   If TiVo had already filed a first-filed suit in East Texas (as TiVo claims in its Motion), then TiVo's second-filed mirror-image suit would have been unnecessary.   TiVo's second-filed suit against Cisco demonstrates that the prior lawsuits in Texas—which focused on different parties, patents, and products—do not substantially overlap with this litigation and cannot resolve all the disputes between Cisco and TiVo.

Furthermore, TiVo makes a critical omission in arguing that East Texas is the first-filed forum.   While TiVo's DVR patents have been litigated in the Eastern District of Texas since 2004, they have been litigated in this District since <u>2002</u>.   The first time that TiVo asserted any of the Patents-in-Suit was in the Northern District of California on January 23, 2002, when TiVo asserted U.S. Patent No. 6,233,389 (the same patent that it would later assert against EchoStar in East Texas) against SONICblue and ReplayTV.   Moreover, the first time TiVo asserted U.S. Patent No. 6,792,195—another of the Patents-in-Suit—was again in the Northern District of California (in a case against Microsoft in 2011).

TiVo then alternatively argues that, even if this action is the first-filed suit, this Court should disregard the "first-to-file" rule because of the other litigations that TiVo has filed in East Texas.   While TiVo states that "the Texas court has been presiding over [the Texas litigations] for several years" (TiVo Br. at 1), Judge Folsom (who is now retired), not Judge Gilstrap, presided over the *EchoStar* trial (which involved different products and only 1 of the 4 Patents-in-Suit here), and the *Verizon* and *Motorola* cases were assigned to Judge Gilstrap only a few months ago on March 16, 2012, and April 19, 2012, respectively.   Thus, the Texas Court that is currently presiding over these matters does not have the history with these cases suggested by TiVo, and this Court is in as good a position as the Texas Court to adjudicate the disputes between Cisco and TiVo.[2]   Further, TiVo's argument that all TiVo patent cases should proceed

---

[1]  Cisco has filed a Motion to Transfer in that suit, seeking to transfer that case from the Eastern District of Texas to this District.   *See* Decl. of Yen Nguyen In Support Of Cisco System, Inc.'s Opp'n to TiVo's Mot. to Dismiss or Transfer ("Nguyen Decl."), Ex. 1.

[2]  No *Markman* proceedings have taken place in the *Motorola* case, and Judge Folsom previously presided over the *Verizon* proceedings.

in East Texas for the sake of efficiency is refuted by TiVo's own decision to assert one of the Patents-in-Suit in the Northern District of California in the *Microsoft* case while the *Verizon* and *Motorola* cases were pending in Texas.

TiVo also incorrectly argues that the *Verizon* and *Motorola* cases involve "the same patents and some of the same products" as the instant case.   TiVo Br. at 2.   Neither the *Verizon* case nor the *Motorola* case involves all four of the patents that are at issue against Cisco's products in this Court.   And both of those cases are focused on Motorola products.   Further, contrary to the suggestion in its Motion, TiVo had never accused any Cisco products of infringement in the *Motorola* case at the time Cisco filed this lawsuit.   A single Cisco DVR model is now at issue in the *Verizon* case, but it was not added to that case until three weeks ago on June 6, 2012, after Cisco had filed this case.   Given that over 90% of Verizon's DVRs were supplied by Motorola, the lone Cisco DVR model is a minor part of the *Verizon* case (and the recent decision to add the Cisco DVR model is subject to a pending motion for stay).   In contrast, <u>all</u> of the twenty or so DVR models that Cisco has supplied to numerous different customers are at issue in this case with respect to <u>all</u> of the asserted TiVo patents.

TiVo's accusation that Cisco has engaged in forum-shopping also is meritless.   Cisco filed this action in this District where both parties' headquarters and principal places of business are located, where relevant Cisco and TiVo documents and witnesses are located, where TiVo successfully transferred one of its recent patent cases, and where all of the key non-party witnesses reside, including all eight of the named inventors on the four asserted patents.   In contrast, TiVo fails to identify any relevant evidence or witnesses in the Eastern District of Texas.   Aside from litigation, the only Texas connection that TiVo claims to have is a warehouse operated by a third party in Fort Worth, which is not even in the Eastern District of Texas.   *See* TiVo Br. at 4.   TiVo cannot credibly deny that the Northern District of California has the strongest ties to both parties, is the most convenient forum, has the strongest interest in resolving the dispute, and has absolute subpoena power over the key non-party witnesses.

Accordingly, there is no reason to disturb Cisco's presumptive right as the first-filed litigant, and this Court should deny TiVo's motion to dismiss or transfer this suit.

## II.       BACKGROUND

### A.       Cisco's Declaratory Judgment Action Is The First-Filed Suit

On May 30, 2012, Cisco filed this action seeking a declaration that none of the numerous models of DVRs that Cisco has supplied to numerous different customers infringes U.S. Patent Nos. 6,233,389, 7,529,465, 7,493,015, and 6,792,195 (collectively, the "Patents-in-Suit") and that the Patents-in-Suit are invalid.  *See generally* Dkt. 1.  Cisco's complaint is the first action involving TiVo patents to which Cisco is a party; the first case that involves all four of the Patents-in-Suit; and the first case that involves all of Cisco's DVRs.   At the time it was filed, Cisco's complaint was the only pending suit in which Cisco's alleged infringement of TiVo's patents was joined.

Five days after Cisco filed its complaint in this action, TiVo filed a mirror-image suit in the Eastern District of Texas on June 4, 2012.   Wells Decl.,[3] Ex. 18.   TiVo alleged that the same Cisco products that are identified in Cisco's complaint in this Court infringe the same four TiVo patents identified in Cisco's complaint in this Court.   *Compare id.* ¶¶ 8, 10, *with* Dkt. 1 ¶¶ 1, 2.

### B.       TiVo First Asserted Two of the Patents-In-Suit In This District

The first time that TiVo asserted any of the Patents-in-Suit was in the Northern District of California in 2002, not the Eastern District of Texas.   On January 23, 2002, TiVo asserted the '389 Patent (the same patent it later asserted against EchoStar) against SONICblue and ReplayTV.   Nguyen Decl., Ex. 2 at 19.   In addition, the first time that TiVo asserted the '195 Patent—another of the Patents-in-Suit—was in the Northern District of California against Microsoft in 2011.   *Id.*, Ex. 3 at 14-16.

### C.       The Texas TiVo Actions Previously Handled by Judge Folsom Involve Different Parties, Different Patents, and Different Accused Products

Until his retirement in March 2012, Judge Folsom presided over the earlier TiVo litigations in East Texas.   As a result, Judge Folsom issued the *Markman* order and presided over the trial in *EchoStar*.   *See, e.g.*, *EchoStar Commc'ns Corp.*, 2005 WL 6225413 (E.D. Tex.

---

[3]  Decl. Of Maclain Wells In Support Of TiVo Inc.'s Mot. To Dismiss Or Transfer.

Aug. 18, 2005) (Folsom, J.) (attached as Wells Decl., Ex. 20).   In addition, Judge Folsom issued the *Markman* orders in both the *AT&T* case (prior to its settlement) and the currently-pending *Verizon* case.   Wells Decl., Exs. 5, 11.   Both the *EchoStar* and the *AT&T* cases have concluded. Following Judge Folsom's retirement, the *Verizon* and *Motorola* cases were reassigned to Judge Gilstrap a few months ago, on March 16, 2012 and April 19, 2012, respectively.   *Id.*, Exs. 6, 7.

None of TiVo's earlier litigations in East Texas includes Cisco as a party, includes all four Patents-in-Suit, or includes the numerous models of Cisco DVRs that are at issue in this case. Cisco was not a party in the *EchoStar* case and only the '389 Patent was at issue.   *See, e.g.*, *TiVo Inc. v. EchoStar Commc'ns Corp.*, 2005 WL 6225413 (E.D. Tex. Aug. 18, 2005) (Folsom, J.); *TiVo Inc. v. Dish Network Corp.*, 640 F. Supp. 2d 853 (E.D. Tex. 2009) (Folsom, J).   Cisco also was not a party in the *AT&T* case, which did not involve the '195 Patent.   Wells Decl., Ex. 3. Also, only a small amount of information for one Cisco DVR model was produced in response to TiVo's subpoena in that case—a total of eighty-two pages of documents, half of which were publicly available and none of which did not include source code.   Nguyen Decl. ¶ 2.

Cisco is not a party in the *Verizon* case.   In fact, for the last three years, the focus of the *Verizon* case has been on Motorola DVRs, which make up more than 90% of the accused DVRs in Verizon's network.   *See* Wells Decl., Exs. 8.   Until June 6, 2012, no Cisco DVRs were in the *Verizon* case.   On the last day of fact discovery, June 6, 2012—after both Cisco and TiVo filed their respective lawsuits over all of Cisco's DVRs and the four Patents-in-Suit—a single Cisco DVR model that Cisco supplies to Verizon was added to the *Verizon* case.   *Id.*, Exs. 9, 12. However, this addition is the subject of Cisco's motion to stay TiVo's claims against this product. Nguyen Decl., Exs. 4, 5, 6.

Cisco also is not a party in the *Motorola* case, and TiVo had not accused any Cisco products of infringement in that case at the time Cisco filed this lawsuit.   Wells Decl., Ex. 16. The *Motorola* case first involved the '389 and '465 Patents until TiVo amended its counterclaims on March 26, 2012, to add the '195 Patent and Time Warner Cable as a counterclaim defendant. *Id.*, Exs. 15, 16.   Both additions are currently the subjects of motions to dismiss and strike. Nguyen Decl. ¶ 3.   Notably, in its amended counterclaims, TiVo accused several different

1   Motorola DVRs of infringement but did not accuse any Cisco DVRs of infringement.   *See* Wells

2   Decl., Exs. 15, 16.

3       **D.     Both Cisco And TiVo Have Strong Ties To This District, Where Their**
           **Headquarters Are Located**

4

5   Cisco is a California corporation with its headquarters and principal place of business in

6   San Jose, California.   Dkt. 1 ¶ 2.   Since being founded in 1984, Cisco has been based in the

7   Northern District of California and employs over 16,000 people there.   Nguyen Decl., Exs. 8 at

8   1; 9 at 2.   Among other things, Cisco develops and supplies equipment, including DVRs, to

9   service providers such as cable and telecommunications companies.   Dkt. 1 ¶ 2.

10   TiVo also has strong ties to the Northern District of California, having its headquarters

11   and principal place of business in Alviso, California.   Dkt. 22 ¶ 3; Wells Decl., Ex. 18 ¶ 1;

12   Nguyen Decl., Ex. 10 at 4.   Indeed, in connection with TiVo's successful motion to transfer a

13   lawsuit against Microsoft from the Western District of Washington to this District, TiVo declared

14   that the "overwhelming majority" of its employees work at TiVo's Alviso, California

15   headquarters, "including those who oversee technology issues, research and development, and

16   sales and marketing."   Nguyen Decl., Ex. 10 at 4.   TiVo further declared in those same

17   proceedings that "[a]lmost all of TiVo's documents are centrally maintained at TiVo's California

18   headquarters[.]"   *Id.*

19       **E.     The Key Non-Party Witnesses Reside In The Northern District Of California**

20   All eight of the named inventors, the attorneys most involved in prosecuting the Patents-

21   in-Suit, and prior-art inventors are located in the Northern District of California, and thus are

22   within this Court's absolute subpoena power, and beyond the subpoena power of the Texas Court.

23   Seven of the eight named inventors of the Patents-in-Suit are non-parties, and all eight

24   reside and/or work in the Northern District of California: (1) James M. Barton, TiVo's co-founder

25   and former Chief Technical Officer, resides in Los Gatos; (2) Roderick J. McInnis resides in

26   Milpitas and works in Fremont; (3) Alan S. Moskowitz resides in Oakland and works in

27   Emeryville; (4) Andrew M. Goodman resides in Portola Valley and works in Cupertino; (5)

28   Ching Tong Chow resides in Los Altos; (6) Jean Swey Kao resides in Cupertino and works in San

---

Jose; (7) Wijnand Van Stam resides in Sunnyvale and works in Santa Clara; and (8) Robert Vallone resides in Palo Alto.   *Id.*, ¶ 4 & Ex. 11.

Both of the main prosecuting attorneys of the Patents-in-Suit (and their firms) are located in the Northern District of California: (1) Michael Glenn resides in Portola Valley and works in Menlo Park; (2) Glenn Patent Group is located in Menlo Park; (3) Kirk D. Wong resides in Fremont and works in San Jose; and (4) Hickman Palermo Truong & Becker LLP (which is now Hickman Palermo Truong Becker Bingham Wong LLP) is located in San Jose.   *Id.*

Finally, a number of non-party inventors of key prior art reside in the Northern District of California.   For example, in the pending reexamination of the '465 Patent, the PTO has rejected all claims as being anticipated by U.S. Patent No. 7,272,298.   *Id.*, Ex. 12 at 24-36.   Richard Lang, a named inventor on U.S. Patent No. 7,272,298, resides and works in Santa Rosa, California.   *Id.*, ¶ 4 & Ex. 11.   Similarly, in the pending reexamination of the '015 Patent, the PTO has rejected claims as being anticipated by U.S. Patent No. 6,064,794.   *Id.*, Ex. 13 at 64-77. Both of the named inventors of U.S. Patent No. 6,064,794 reside and work in the Northern District of California—David L. McLaren resides in Daly City and works in San Jose, while Gilles Boccon-Gibod resides in Palo Alto and works in Sunnyvale.   *Id.*, ¶ 4 & Ex. 11.

## III.   THIS COURT SHOULD DENY TIVO'S MOTION UNDER THE FIRST-TO-FILE RULE

The Ninth Circuit recognizes the "first-to-file" rule, which holds that "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit [when] no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).   In patent cases, the Federal Circuit has similarly emphasized that "[t]he general rule favors the forum of the first-filed action, whether or not it is a declaratory action."   *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).   The first-to-file rule in patent cases creates a "presumptive right of the first litigant to choose the forum," and this choice should be disturbed only in extraordinary circumstances.   *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989).

TiVo's motion to dismiss under the first-to-file rule should be rejected for three reasons.

First, TiVo incorrectly argues that TiVo's pending actions in the Eastern District of Texas are the first-filed actions with respect to the Cisco/TiVo dispute.   *See* TiVo Br. at 8-12.   Second, TiVo exaggerates the Texas Court's prior experience and familiarity with the TiVo patents to wrongly argue that this Court lacks the requisite experience to preside over this case.   *See id.*   Finally, TiVo's accusations that Cisco has engaged in forum-shopping and interference with TiVo's Texas actions are meritless.   *See id.* at 11-12.

### A.    Cisco's Declaratory-Judgment Action Is The First-Filed Suit

In the Ninth Circuit, the first-to-file rule applies when similar cases meet the threshold requirements of duplicative litigation: (1) chronology; (2) identity of parties; and (3) similarity of issues.   *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957-58 (N.D. Cal. 2008) (citing *Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)). The second prong requires that "some of the parties in one matter are also in the other matter[.]" *Id.* at 959 n.6.   The third prong requires an inquiry as to whether "'the two pending actions are so duplicative or involve substantially similar issues that one court should decide the issues'" and whether there is "substantial overlap between the two suits."   *Id.* at 959-60.

There can be no dispute that, as between Cisco's and TiVo's cases against each other, Cisco's case was filed first: Cisco filed its complaint in California on May 30, 2012, while TiVo filed its mirror-image complaint in Texas on June 4, 2012.   Dkt. 1; Wells Decl., Ex. 18; *see Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1226, 1332-33 (Fed. Cir. 2004) (affirming injunction of later-filed action even where the parties' filings were merely four hours apart). Also, there can be no dispute that there is "identity of parties" and "similarity of issues": the parties are identical (Cisco and TiVo) and the issues are the same because they involve the same parties, the same four Patents-in-Suit, and the same accused products (all Cisco DVRs).   Thus, these two actions meet all of the threshold requirements for application of the first-to-file rule, with Cisco's action being the first-filed action.

Ignoring its second-filed mirror suit, TiVo argues that its pending Texas litigations against <u>other</u> parties—the *Verizon* and the *Motorola* cases—are the first-filed actions with respect to Cisco's declaratory-judgment action.   TiVo Br. at 9-10.   However, neither case meets the

second prong ("identity of parties") or the third prong ("similarity of issues") of the first-to-file rule.

First, TiVo fails to show how either the *Verizon* case or the *Motorola* case can satisfy the "identity of parties" requirement.   There is no dispute that Cisco is not a party in the *Verizon* or *Motorola* cases, and neither Verizon, Motorola, nor Time Warner Cable are parties to Cisco's case.   As a result, there is no "identity of parties."

TiVo cites *Intersearch* for the proposition that "'exact identity is not required to satisfy the first-to-file rule.'"   TiVo Br. at 9 (quoting 544 F. Supp. 2d at 959 n.6).   However, *Intersearch* goes on to say that "[t]he rule is satisfied if <u>some [of] the parties</u> in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters."   544 F. Supp. 2d at 959 n.6 (emphasis added).   In other words, at most *Intersearch* suggests that if there are <u>at least two</u> overlapping parties, then the identity prong could be met.   In this case, there is no dispute there is only one common party (*i.e.*, TiVo).   As such, this prong cannot be met even under the case law that TiVo cites.   *See, e.g.*, *Stanley v. Novartis Pharms. Corp.*, 2012 U.S. Dist. LEXIS 61713 (C.D. Cal. Apr. 13, 2012) (stating that "the court has identified no case in which a court found this factor satisfied where no plaintiff in the action was a plaintiff or class member in another case").

TiVo relies almost exclusively on *Proofpoint* to argue that Cisco is sufficiently identical to Motorola, Verizon, and/or Time Warner Cable to meet the identity prong of the first-to-file rule.   TiVo Br. at 9-10.   *Proofpoint* is distinguishable because the court in that case did not rely on the first-filed rule, concluding instead that the first-filed rule was "not clearly applicable because Proofpoint [was] not a party to the Texas Action."   *Proofpoint, Inc. v. InNova Patent Licensing LLC*, 2011 U.S. Dist. LEXIS 120343, at *17-18 (N.D. Cal. Oct. 17, 2011).   The court in *Proofpoint* held that the declaratory-judgment plaintiff had failed to establish the existence of an actual controversy, and TiVo does not dispute the existence of a controversy in this case.   *Proofpoint*, 2011 U.S. Dist. LEXIS at *7-8.[4]

---

[4] *Proofpoint* is distinguishable for two additional reasons: the court relied on (1) the absence of any argument that the transferee venue was inconvenient; and (2) the absence of any argument that the transferred party would be prejudiced by intervening in the other action.   *See* 2011 U.S.

Second, TiVo fails to show that the issues in either the *Verizon* case or the *Motorola* case "substantially overlap" the issues in this case.   Both cases cited by TiVo to argue for substantial overlap are distinguishable because they each involved separate actions on the same patents and the same accused products.[5]   Here, in contrast, TiVo does not contend that the products at issue in this case are the same as those at issue in either the *Verizon* or *Motorola* cases.   TiVo Br. at 11.   Nor can it.   No Cisco DVRs are included in the *Motorola* case.   TiVo's counterclaims against Time Warner Cable accused only Motorola set-top boxes, stating, "[t]hese set-top boxes include without limitation Motorola set-top boxes bearing, for example, a 'DCH' designation (e.g., DCH 34xx Series and DCH64xx Series), 'DCT' designation (e.g., DCT64xx Series), 'DCX' designation (e.g., DCX34xx Series), and related products, among others."[6]   *See, e.g.*, Wells Decl., Ex. 16 at ¶ 96.   Similarly, the *Verizon* dispute focuses on Motorola DVRs, which make up more than 90% of the accused DVRs in Verizon's network.   In contrast to the *Verizon* and *Motorola* cases, the instant case does not include any Motorola DVRs, and instead includes all of the numerous Cisco models of DVRs, only one model of which is at issue in the *Verizon* case.   Furthermore, both the *Verizon* and *Motorola* cases include only a subset of the patents at issue in this case.   The *Verizon* case does not include the '195 Patent, and the *Motorola* case does not

---

Dist. LEXIS 120343, at *22.   Neither applies here.   First, for the reasons stated herein, the Northern District of California is substantially more convenient than the Eastern District of Texas.   *See infra* Section IV.   Second, Cisco would be prejudiced if it attempted to fully intervene in the *Verizon* case.   Fact discovery closed in the *Verizon* case on the same day that the Cisco DVR was added to the case, expert reports have already been served, and trial is set for October 2012.   Wells Decl., Ex. 9.   TiVo and Verizon have spent three years developing their cases on the accused Motorola DVRs; Cisco cannot be expected to prepare its defense in three months without any opportunity for discovery.   Cisco has thus filed a motion in the *Verizon* case seeking to stay TiVo's claims against the one Cisco DVR at issue in that case.   Nguyen Decl., Ex. 6.

[5] TiVo's additional case law does not support its argument.   In *Shire*, the first-filed and second-filed suits "involve[d] the same patent and the same allegedly infringing product" because they both centered on the question of whether "the product Daytrana infringes the '760 Patent."   *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008).   Similarly, in *Horton Archery*, the first-filed and second-filed suits also involved the same asserted patent and accused products.   *Horton Archery, LLC v. Am. Hunting Innovations, LLC*, No. 5:09CV1604, 2010 U.S. Dist. LEXIS 6699, at *14 (N.D. Ohio Jan. 27, 2010).

[6] To the extent that TiVo attempts to manufacture an argument for dismissal or transfer by trying to belatedly add Cisco boxes to the *Motorola* case after the filing of this suit (and TiVo's second-filed mirror suit on Cisco's boxes), this Court should reject any such arguments under the "first-to-file" rule and § 1404(a).

---

1    include the '015 patent.   *Compare* Wells Decl., Exs. 8, 16, *with* Dkt. 1.   In short, there is no

2    substantial overlap between the cases.   Regardless of what occurs in the *Verizon* and *Motorola*

3    cases, substantial disputes over all of Cisco DVRs will remain to be resolved in this case.   *See,*

4    *e.g.*, *Intersearch*, 544 F. Supp. 2d. at 959-60.

5         Indeed, by filing its mirror image suit at a time when both the *Verizon* and *Motorola* cases

6    were pending, TiVo showed that those cases are not "first filed" with respect to Cisco.   If any of

7    the Texas TiVo cases were truly the first-filed suit, then there would have been no need for TiVo

8    to have filed a second, mirror-image complaint focusing on all of Cisco's DVRs and all four

9    Patents-in-Suit.[7]

10   **B.   The Texas Actions Do Not Justify Dismissal Or Transfer Of Cisco's First-**
          **Filed Suit Because They Involve Different Parties, Different Patents, And**
11        **Different Accused Products**

12        **1.   TiVo Wrongly Asserts That Judicial Economy Is Served By Litigating**
               **In East Texas**
13

14        Relying upon *Proofpoint*, TiVo argues that this case must be litigated in East Texas for

15   the sake of judicial economy and to avoid inconsistent judgments.   *See* TiVo Br. at 10-11, 12-

16   13.   TiVo's arguments fail for three reasons.

17        First, TiVo glosses over the fact that the Cisco/TiVo disputes include issues that are

18   different from, and therefore cannot be addressed in, TiVo's prior litigations.   Since their

19   inception several years ago, both the *Verizon* and *Motorola* cases have been focused on Motorola

20   DVRs.   Wells Decl., Exs. 8, 12, 15.   No Cisco DVRs have been included in the *Motorola* case

21   matter, and this Court should disregard any attempt by TiVo to manufacture a venue-transfer

22   argument by trying to add Cisco DVRs to the *Motorola* case after Cisco has filed this suit and

23

24   ───────────────────────
     [7] Even if the *Verizon* or the *Motorola* suits were the first-filed suits (which they are not), this suit
     should proceed under the "customer suit" exception since this suit, as a manufacturer suit, can
25   resolve most, if not all, of the claims against the customers.   *See, e.g.*, *Katz v. Lear Siegler, Inc.*,
     909 F.2d 1459, 1464 (Fed. Cir. 1990); *Spread Spectrum Screening v. Eastman Kodak Co.*, 657
26   F.3d 1349, 1357 (Fed. Cir. 2011) (noting that the "guiding principle in the customer suit
     exception cases are efficiency and judicial economy").   This case is a textbook example for
     application of the customer suit exception.   Cisco designed, developed, and supplied the
27   DVRs—the accused products.   Proceeding on a subset of Cisco DVRs in either the *Verizon* or
     *Motorola* cases will <u>not</u> resolve all of TiVo's claims against the Cisco DVRs because of the
28   additional patents and products in this case.

TiVo has filed a subsequent mirror suit that accuses all of Cisco's numerous DVRs.   In addition, Cisco DVRs are substantially different from Motorola DVRs because they have different software, hardware, design, and functionality, which were developed by different engineers and different companies.   Thus, Cisco DVRs and Motorola DVRs will require individual assessment, which will eliminate the possibility of inconsistent results.   *See Interwoven, Inc. v. Vertical Computer Sys., Inc.*, Nos. C 10-4645 RS & C 11-0189 RS, 2011 U.S. Dist. LEXIS 49428, at *13 (N.D. Cal. May 2, 2011); *see also Google, Inc. v. Traffic Information, LLC*, 2010 WL 743878, at *7 (D. Or. Feb. 2, 2011).

Second, TiVo exaggerates the Texas Court's prior experience with TiVo's litigations, and this Court is equally well-positioned to resolve the Cisco/TiVo disputes.   Prior to his retirement, Judge Folsom presided over *EchoStar*, which involved only the '389 Patent, and issued the *Markman* order in that case.   *See* Section II.C.   Moreover, Judge Folsom presided over the *Markman* proceedings and issued the *Markman Order* in both of the *AT&T* and *Verizon* cases. *Id.*   The current Texas Court's history with these cases began on March 16, 2012 for the *Verizon* case and on April 19, 2012 for the *Motorola* case.   Wells Decl., Exs. 6, 7.   Moreover, the '195 Patent was only recently asserted in the *Motorola* case—on March 26, 2012—and is the subject of a pending motion to strike.   Wells Decl., Ex. 16; Nguyen Decl. ¶ 3.   As a result, this Court is in as good a position as the Texas court to handle this case.   *See Microsoft Corp. v. Geotag Inc.*, --- F. Supp. 2d ---, 2012 WL 114128 (D. Del. 2012) ("[B]ut the Magistrate Judge who decided claim construction is no longer on the bench (D.I. 29, ¶ 48), and thus the familiarity he gained about the patent is equally available to judges in Texas and in Delaware."); *see also Interwoven*, 2011 U.S. Dist. LEXIS 49428, at *13; *PharmaNet, Inc. v. DataSci Ltd. Liability Co.*, 2009 WL 396180, at *16 (D.N.J. Feb. 17, 2009) (finding that simply because the "Judge of that Court has presided over cases concerning the [patent-in-suit] in the past does not dictate that all litigation pertaining to this patent must be adjudicated by him").   Moreover, TiVo's motion completely omits that TiVo previously asserted two of the Patents-in-Suit in the Northern District of California in the *SONICblue* case (where TiVo first litigated the '389 patent) and the *Microsoft* case (where TiVo first litigated the '195 patent).   Nguyen Decl., Exs. 2 at 19; 3.

Third, TiVo's argument that the Texas Court must address all four TiVo patents in order to preserve judicial economy and prevent inconsistent rulings is incorrect.   TiVo Br. at 11.   The Federal Circuit has stated that prior litigation in a particular venue does not entitle the patent owner to continued litigation in that venue.   *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559 (Fed. Cir. 2011) ("Our holding today does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1178 (Fed. Cir. 2010).   Indeed, this Court and other courts have rejected the argument that the same patent cannot be litigated in parallel in front of different judges in multiple jurisdictions.   *See, e.g.*, *Interwoven*, 2011 U.S. Dist. LEXIS 49428, at *13; *Vertical Computer Sys., Inc. v. Interwoven, Inc.*, No. 2:10-cv-00490-TJW, slip op. at 8 (E.D. Tex. May 10, 2011) (attached as Nguyen Decl., Ex. 15); *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 415 (S.D.N.Y. 2010) ("The fact that PixFusion initiated patent infringement in the Eastern District of Texas does not entitle it to litigate all disputes concerning those same patents in that forum."); *Pergo, Inc. v. Alloc, Inc.*, 252 F. Supp. 2d 122, 133 (S.D.N.Y. 2003) ("Patent holders often litigate cases and bring claims alleging infringement of the same patent in multiple jurisdictions against different parties, and they are able to resolve discrepancies, if they exist, by appealing those decisions to the Court of Appeals for the Federal Circuit."); *see also, e.g.*, *Google*, 2010 WL 743878, at *7.

Under similar circumstances, this Court in *Interwoven* asserted jurisdiction over Interwoven's declaratory-judgment action under the first-to-file rule, while transferring Samsung's declaratory-judgment action on the same patents because Samsung's action had been filed after Vertical's action against Samsung (on these same patents) had been filed in Eastern District of Texas.   2011 U.S. Dist. LEXIS 49428, at *14-16.   Thus, there were parallel litigations involving the same asserted patents but with different defendants and accused products. This Court noted that neither court had either a substantially better familiarity or a deeper investment in the parties' dispute than the other.   *Id.* at *13.   This Court also found it significant that different accused products were involved in these parallel cases, stating: "the question of whether each defendant's product infringes Vertical's intellectual property rights

1   requires individual assessment, thereby reducing the chance or danger of inconsistent results."

2   *Id.* at \*14; *see also Vertical*, slip op. at 8 ("However, given that the Court will sever Interwoven

3   from the present case, the risk of inconsistent rulings as it relates to the specific parties is

4   significantly decreased.").   Thus, this Court should follow its reasoning in *Interwoven* and deny

5   TiVo's motion to dismiss.

6           **2.      The Cases TiVo Relies Upon To Argue For Transfer Based on Judicial**
                      **Economy Are Distinguishable**
7

8           The cases that TiVo cites to argue for transfer based on judicial-economy (*see* TiVo Br. at

9   14, 15) are distinguishable because they involved either (1) a request to transfer the lawsuit based

10  on related litigation to the same presiding judge who made substantial investment in that related

11  litigation; or (2) a request to transfer the lawsuit based on related litigation involving both parties.

12          The first group of cases that TiVo cites (*Zoltar*, *Aliphcom*, *Optical*, *Vistaprint*, and

13  *Realtime*) requires a level of prior familiarity and investment by the court that is substantially

14  greater than that of the Texas Court currently presiding over the *Verizon* and *Motorola* cases.

15  For example, in *Zoltar*, the court considering the motion to transfer noted of the transferee court:

16          In the California litigation, Judge Ware reviewed tutorials on the technology at
            issue; conducted three claim construction proceedings; issued three claim
17          construction orders construing over twelve claim terms; considered motions for
            summary judgment and motions in limine; conducted a three-week jury trial in
18          which he heard invalidity, infringement, and inequitable conduct arguments;
            prepared a sixty-five page jury instruction; and considered motions for judgment
19          as a matter of law.

20  *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Co.*, 402 F. Supp. 2d 731 (E.D. Tex. 2005).

21  Similarly, in *Aliphcom*, the presiding judge in the transferee court was already invested in the suit

22  and was also presiding over another infringement action involving the same patent and

23  technology.   In fact, that presiding judge had already conducted claim-construction proceedings

24  and the action was nearing trial.   *Aliphcom v. Wi-LAN Inc.*, 2010 U.S. Dist. LEXIS 123295, at

25  \*7 (N.D. Cal. Nov. 10, 2010); *see also Interwoven*, 2011 U.S. Dist. LEXIS 49428, at \*11.

26  Likewise, the trial courts in *Optical* and *Vistaprint* had presided over a related litigation and thus

27  had "substantial experience" with the patents based on their handling of extensive claim

28  construction proceedings and/or trial.   *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir.

2010) (the Magistrate Judge had "substantial experience with the patent-in-suit based on prior litigation involving the plaintiff, which included a hearing and lengthy opinion construing various claim terms"); *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992) (the court had presided over a prior litigation "from its filing through trial and post-trial motions").

Additionally, TiVo's reliance on the Magistrate Judge's ruling in *Realtime* is misplaced because that ruling was reversed by the Federal Circuit. In *Realtime*, the Magistrate Judge denied a motion to transfer because he found overlap between the pending three matters and a previous matter over which he had presided. *See Realtime Data LLC v. Morgan Stanley*, 2010 WL 1064474, at *4 (E.D. Tex. Mar. 18, 2010) ("[T]wo of the asserted patents in these actions are identical to those construed in Packeteer and the data compression technology at issue in all of Realtime's cases deal with similar prior art and underlying technological concepts."). A motion to reconsider the Magistrate Judge's order was rejected by the District Court. *Realtime Data, LLC v. Morgan Stanley*, 2010 WL 4274576 (E.D. Tex. Oct. 28, 2010). However, the Federal Circuit reversed the district court in *In re Morgan Stanley*, 417 Fed. Appx. 947 (Fed. Cir. 2011) (holding that the convenience factors were not overcome by judicial economy).

The second group of cases TiVo cites is based on the first-to-file rule; in them, the transferee court was already presiding over an earlier-filed litigation in which <u>both</u> parties were involved. *See Aliphcom*, 2011 U.S. Dist. LEXIS, at *2-3 (applying the first-to-file rule when both the first-filed and second-filed actions included Plaintiff Aliphcom and Defendant WiLAN).[8] Indeed, the court in *Interactive Fitness* simply reiterated the well-known principle that the purpose of the first-to-file rule is to prevent multiple, duplicative lawsuits. *Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*, 2011 WL 1302633, at *3 (N.D. Cal. Apr. 5, 2011). Here, Cisco is not a party in the *Verizon* or *Motorola* cases, and those cases cannot

---

[8] Although the procedural posture in *In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009), is slightly different, it is still instructive. Volkswagen's declaratory-judgment suit was the second-filed suit, and therefore was transferred to the venue of the first-filed suit—in which Volkswagen was a party—under the first-to-file rule. *In re Volkswagen of Am., Inc.*, 296 Fed. Appx. 11 (Fed. Cir. 2008). The court presiding over the first-filed suit denied Volkswagen's motion to transfer the first suit. *Volkswagen*, 566 F.3d at 1351.

1    resolve the Cisco/TiVo disputes because neither involves all four of the Patents-In-Suit, the

2    *Verizon* case only involves a single Cisco DVR model, and the *Motorola* case does not include

3    any Cisco DVRs.

### C.    TiVo Cannot Show Any Exception To Avoid The First-To-File Rule

5          TiVo alternatively argues that, even if Cisco's case is the first-filed action, this Court

6    should reject the first-to-file rule based on Cisco's alleged forum-shopping and/or alleged

7    interference in the *Verizon* case.   TiVo Br. at 11-12.   Neither argument has merit.

8          First, there is no dispute that Cisco filed its complaint in the District where both Cisco and

9    TiVo have their headquarters and principal places of business, where relevant Cisco and TiVo

10   documents and witnesses are located, and where relevant non-party documents and witnesses are

11   located.   *See* Section II; *see, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993

12   (N.D. Cal. 2011).   Also, TiVo has previously asserted both the '389 Patent and the '195 Patent

13   in this District.   *See* Section II.   Thus, Cisco filed its action in the District with the most

14   connections to the Cisco/TiVo dispute.   And TiVo has no basis in law or fact to argue that

15   Cisco's filing of this suit in both parties' home forum is "forum shopping" simply because TiVo

16   has filed prior lawsuits against other parties in East Texas.   Indeed, the Federal Circuit has

17   warned against a patent owner's entitlement and expectation of maintaining all of its actions in a

18   particular venue.   *See Verizon*, 635 F.3d at 562 ("Our holding today does not mean that, once a

19   patent is litigated in a particular venue the patent owner will necessarily have a free pass to

20   maintain all future litigation involving that patent in that venue."); *Zimmer*, 609 F.3d at 1382.

21         Further, TiVo mischaracterizes Cisco's motion for a limited stay (only as to the one Cisco

22   DVR model) in the *Verizon* case to argue that Cisco seeks to delay and/or disrupt the *Verizon*

23   case.   *See* TiVo Br. at 12.[9]   Since TiVo filed the *Verizon* case almost three years ago, that case

---

[9]   The cases cited by TiVo—*Terra Nova* and *Apotex*—are distinguishable.   *See* TiVo Br. at 11.
Unlike in the present case, Terra Nova created an "inherent conflict of interest" between its duty
to provide a defense for its insured in the first action and its efforts to determine its obligations to
defend its insured in a second, co-pending action.   *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887
F.2d 1213, 1217 (3d Cir. 1989).   In *Apotex*, the defendant filed a declaratory-judgment action in
which it "set[] forth the same allegations on inequitable conduct with respect to the [patent-in-
suit] that the Court denied it leave to add to its Third Amended Answer in the [pre-existing]
*Sanofi* action."   *Apotex Inc. v. Sanofii-Synthelabo*, 286 F. Supp. 2d 549, 550 (S.D.N.Y. 2005).
Neither of these cases applies here because Cisco does not have an "inherent conflict of interest"

has been focused on Motorola DVRs.   On June 6, 2012—after Cisco filed its complaint and after TiVo filed its mirror-action complaint—one Cisco DVR model was added to the *Verizon* case. Wells Decl., Ex. 12.   Within a week—on June 12, 2012—Cisco filed for a stay in the *Verizon* case as to the one Cisco DVR because both Cisco and TiVo had filed separate, stand-alone actions that cover all of Cisco's DVRs and all four of the asserted TiVo patents.   Nguyen Decl., Ex. 6.   Specifically, litigating a subset of Cisco DVRs—only one out Cisco's numerous models—against a subset of patents—only three of the four—in the *Verizon* case would not address all of the issues in this action.   Moreover, such piecemeal litigation involving multiple "customer suits" spread over separate litigations would be unfairly prejudicial to Cisco.[10]   *See id.* at 7-10.   In short, Cisco is not attempting to delay the *Verizon* case; it simply wants the infringement dispute over all of Cisco DVRs resolved in this case, to which Cisco is a party.

Consequently, no exceptions to the first-to-file rule apply in this case.   There is no reason to deviate from the well-established first-to-file rule (where Cisco's action in this Court is the first-filed suit) and no reason for this Court to decline jurisdiction over this action.   Accordingly, TiVo's motion to dismiss should be denied.

## IV.   THIS COURT ALSO SHOULD DENY TIVO'S MOTION BECAUSE THIS FORUM IS MORE CONVENIENT THAN THE EASTERN DISTRICT OF TEXAS

Even assuming *arguendo* that the first-to-file rule did not apply, TiVo's motion to transfer should be denied because this District is more convenient than the Eastern District of Texas under 28 U.S.C. § 1404.   Cisco filed this suit in the home forum of both Cisco and TiVo, which are both headquartered here.   It is also where numerous non-party witnesses reside, including all eight of the named inventors on the four Patents-in-Suit, the main patent prosecuting attorneys, as well as various prior-art inventors.

In order to transfer Cisco's action out of this Court, TiVo bears a heavy burden to show that litigating in the Northern District of California would be so inconvenient that it should

---

in litigating separately from the *Verizon* case, and Cisco's complaint was not triggered by a court's denial of leave to amend in a pre-existing action.

[10] As discussed in Footnote 7, the threat of multiple, repetitive lawsuits involving a supplier's products—such as Cisco's DVRs—is the rationale behind the "customer suit" exception.

override Cisco's choice of its home forum.   *See Barnes & Noble*, 823 F. Supp. 2d at 994 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843. Because "a plaintiff's choice of forum should be afforded deference," transfer should be denied unless the balance of private and public interest factors "clearly weigh in favor of rejecting Plaintiff['s] choice of forum."   *Barnes*, 823 F. Supp. 2d at 994-95.   TiVo's cursory argument for transfer ignores the private and public factors, as well as the significant presence of Cisco, TiVo, and relevant non-party witnesses in this District, all of which weigh heavily against upsetting Cisco's choice of forum—the Northern District of California.

### A.   The Private Factors Weigh Against Transfer From This District

"Private factors include the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practice problems that make trial of a case easy, expeditious, and inexpensive.'"   *Decker*, 805 F.3d at 843 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).   The first two private factors weigh against transfer, while the remaining two factors are neutral.[11]

### 1.   Relative Ease Of Access To Sources Of Proof Weighs Against Transfer

Here, access to sources of proof strongly favors the Northern District of California.   In judicial proceedings to transfer a case to this District under Section 1404(a), TiVo declared that the "overwhelming majority" of its employees work at its Alviso, California headquarters, "including those who oversee technology issues, research and development, and sales and marketing."   Nguyen Decl., Ex. 10 at 4, 9.   TiVo also declared that TiVo "centrally maintains all or nearly all of its relevant documents at its headquarters in Alviso, California."   *Id.* at 8.   In addition, TiVo asserted two of the Patents-in-Suit—the '389 and '195 Patents—in litigations in this District.   *Id.*, Exs. 2, 3.   Likewise, Cisco's headquarters and principal place of business is in San Jose, California.   Dkt. 1 ¶ 2.   Non-party witnesses, including all eight named inventors,

---

[11]   The factor regarding the "possibility of view of premises, if view would be appropriate to the action" will not be discussed because it is not applicable to this action.

1   patent prosecutors of the Patents-in-Suit, and prior-art inventors reside and/or work within this

2   District.   *See* Section II.   And to the extent that these non-party witnesses have relevant

3   documents, such documents would also likely be in this District.

4        TiVo's attempts to tie itself to the Eastern District of Texas are unavailing.   *See* TiVo Br.

5   at 4.   First, TiVo does not even claim that it has any connection to the Eastern District of Texas.

6   Instead, for its "Texas" ties, TiVo points to a <u>third-party</u> distribution center that is part of its

7   supply chain and happens to be located in Fort Worth, which is in the Northern District of Texas.

8   *See id.*   Notably, TiVo does not contend that any of its employees work in Texas at that third-

9   party facility, much less that there are any relevant witnesses at that facility.

10       TiVo's contention that Cisco has a "significant" presence in Texas likewise falls short.

11  *See* TiVo Br. at 4.   First, Cisco's headquarters are in San Jose, California, where it has over

12  16,000 employees.   Nguyen Dec., Ex. 8 at 1; 9 at 2.   The fact that Cisco has an office in

13  Richardson, Texas does not materially impact the convenience analysis.   Cisco also maintains

14  offices in 46 other states.   TiVo has not identified any relevant Cisco witness that resides in

15  Texas, much less the Eastern District of Texas.   Second, TiVo's reliance on the *Connectel* case

16  (which mentioned Cisco's office in Richardson, Texas) is misplaced because that case involved a

17  completely unrelated technology, "intelligent routing technology."   *See Connectel, LLC v. Cisco

18  Sys.*, 2005 U.S. Dist. LEXIS 2252, at *1 (E.D. Tex. Feb. 16, 2005).   In fact, *Connectel* actually

19  undercuts TiVo's Motion because the court in *Connectel* denied a motion to transfer from East

20  Texas to Pennsylvania, holding that the plaintiff's choice of forum should not be disturbed even

21  though the plaintiff had previously litigated the same asserted patent through claim construction

22  in the Pennsylvania court.   *Id.* at *9-13.   Based on facts similar to those in this case, the court in

23  *Connectel* concluded that "[t]he present case involves a different defendant and different

24  products, so it is not in the interest of judicial economy to transfer this case."   *Id.* at 10.

25       Similarly, TiVo's reliance on the other prior litigations in the Eastern District of Texas

26  involving Cisco is unavailing because they have no connection to the current lawsuit.   The

27  Federal Circuit has held that prior litigations in the same district are relevant only if the "previous

28  lawsuit[s] involved the same parties, witnesses, evidence, and facts."   *In re Genentech, Inc.*, 566

F.3d 1338, 1346 (Fed. Cir. 2009).   TiVo has not made (and cannot make) any showing that these unrelated suits are relevant.[12]

Accordingly, this factor weighs against transfer.

### 2.   The Availability Of Compulsory Process In California To Secure The Attendance Of Witnesses Strongly Weighs Against Transfer

"The location of third-party witnesses is usually the most important convenience and justice factor of all."   *Newegg, Inc. v. Telecommunication Sys.*, No. C 09-0982 JL, 2009 WL 1814461, at *7 (N.D. Cal. June 23, 2009).   The ability of potential witnesses to be subject to compulsory process is vital "because courts recognize that reading a deposition at trial—even a videotaped deposition—is no substitute for the advantages to the parties, the judge and the jury of having important witnesses appear live at trial."   *Id.*; *see also Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) ("The convenience of the witnesses is often the most important factor" in the transfer analysis."); 15 Charles AlanWright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 ("If the forum chosen by plaintiff will be most convenient for the witnesses, this is the most powerful argument against transfer.").   TiVo has not identified a single relevant witness in the Eastern District of Texas, and Cisco is aware of none.   In contrast, many non-party witnesses—all eight of the named inventors on all four Patents-in-Suit and both of the main patent prosecutors, as well as several prior-art inventors—reside within the Northern District of California.   The inventors and prior artists are especially critical because their testimony will be key on issues such as conception, non-infringement, invalidity, and even damages.   Importantly, all of these witnesses are subject to this Court's "absolute subpoena power," but are outside of the subpoena power of the Texas Court.   *See In re Hoffman-La Roche*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("absolute subpoena power" is "subpoena power 'for both depositions and trial'") (quoting *In re Volkswagen of Am.*,

---

[12]   None of the three cases that TiVo cites (*see* TiVo Br. at 4) even involved the same technology at issue in this case.   In *Cisco Systems, Inc. v. Huawei Technologies Co.*, one of the defendants' principal place of business was in the Eastern District of Texas, the technology at issue was network routers, and the case focused on defendants' misappropriation of Cisco's source code. In *Cisco Systems, Inc. v. Alcatel USA, Inc.*, no patents were even at issue.   In *Cisco Systems, Inc. v. Telecordia Technologies, Inc.*, the products at issue were networking products.

---

*Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (en banc) ("*Volkswagen II*")); *see also* Fed. R. Civ. P. 45(3); *In re Microsoft*, 630 F.3d 1361, 1363 (Fed. Cir. 2010) (noting Microsoft's assertion that witnesses for to prior art technology resided in the district it sought to litigate in); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

### 3. The Cost Of Attendance For Willing Witnesses Weighs Against Transfer

"The convenience and cost of attendance for witnesses is an important factor in the transfer calculus." *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *see also Genentech*, 566 F.3d at 1343. This factor weighs against transfer. The Northern District of California is where both Cisco and TiVo have their headquarters and principal places of business and where relevant Cisco, TiVo, and non-party witnesses reside. *See* Section II. Thus, litigating this case here would result in less burden for all of these California-based witnesses. *See Volkswagen II*, 545 F.3d at 317 ("it is more convenient for witnesses to testify at home"); *In re Funeral Consumers Antitrust Litg.*, 2005 WL 2334362, at *4 (N.D. Cal. Sep. 23, 2005) ("As for the willing, the convenience-of-witnesses factor looms large. … Among other things, Section 1404(a) prefers a venue where the burden on witnesses will be clearly reduced."). In contrast, litigating this case in Texas would force these California-based witnesses to travel about 1800 miles for trial.[13]   *See* Nguyen Decl., Ex. 17.

Moreover, the cost of attendance in California is lower even for the potential Cisco witnesses who reside in Georgia. These witnesses would have to travel by plane regardless of whether this litigation is in California or Texas. But the inconvenience of traveling to California is mitigated by the fact that these witnesses, as Cisco employees, can take advantage of Cisco's offices and company resources at its Northern District of California headquarters. As a result, the burden on these witnesses can be mitigated in California but not Texas. Thus, this factor weighs substantially against transfer since the Northern District of California would be

---

[13]  Notably, the Fifth Circuit has established the "100-mile" rule, stating that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).

21

1  convenient for the majority of witnesses in this case.   *See In re Biosearch Techs., Inc.*, 452 Fed.

2  Appx. 986, 988-89 (Fed. Cir. 2011); *Acer*, 626 F.3d at 1255; *Genentech*, 566 F.3d at 1345.

3        TiVo incorrectly argues that "[t]he Court in Texas is in the best position to ensure that

4  witnesses are not subject to needless and repetitive depositions, and to ensure that depositions and

5  other discovery are of appropriate scope in light of discovery to date."   TiVo Br. at 14.

6  Contrary to TiVo's statement, there are no significant discovery savings from TiVo's other suits

7  in the Eastern District of Texas.   Cisco has never been a party in any of the TiVo cases in Texas

8  and thus is entitled to full discovery in its own case—including the depositions of witnesses who

9  have already been deposed in the other TiVo litigations.   *See Pepsi-Cola Bottling Co. of

10 Pittsburgh, Inc. v. Pesico, Inc.*, No. 01-2009-KHV, 2002 WL 922082, at *3 (D. Kan. May 2,

11 2002) ("The fact that their depositions have already been taken in similar litigations is not

12 persuasive.   Counsel for Plaintiff should not be restricted to the question and style of

13 examination used by another attorney in another case.").   Moreover, TiVo's filing of its mirror

14 action in the Texas—separate from TiVo's other cases—is an acknowledgement that the disputes

15 between Cisco and TiVo are substantially different than those in the other Texas cases.   As a

16 result, contrary to TiVo's assertions, transferring this case to East Texas simply would not reduce

17 the number of depositions or discovery required.

18             **4.        The "Other Practical Problems" Factor Is Neutral**

19       Although the Ninth Circuit has not specifically linked "interest of justice" and "judicial

20 economy" into its § 1404(a) analysis, others courts have.   *See, e.g.*, *In re Volkswagen*, 566 F.3d

21 1349, 1351 (Fed. Cir. 2009).   Here, Cisco's first-filed action in this District is the first case

22 involving TiVo patents in which Cisco is a party; the first case that involves all four of the TiVo

23 patents; and the first case that involves all of Cisco's DVRs.

24       As discussed in Sections II and III.B, TiVo wrongly asserts that judicial economy is

25 served by litigating in Texas.   TiVo conflates the previous Texas Court's history with prior cases

26 with the experience of the current Texas Court in the *Verizon* and *Motorola* cases to incorrectly

27 argue for transfer.   As also discussed in Sections II and III.B, this Court is as well positioned as

28 the Texas Court to adjudicate the disputes between Cisco and TiVo.   Thus, TiVo's current

litigations in the Eastern District of Texas cannot overcome the first-to-file rule or the other convenience factors that clearly weigh against transfer.   *See Children's Network*, 722 F. Supp. 2d at 415 ("The fact that PixFusion initiated patent infringement in the Eastern District of Texas does not entitle it to litigate all disputes concerning those same patents in that forum."); *Google*, 2010 WL 743878, at *7; *Pergo*, 252 F. Supp. 2d at 133.   TiVo has also previously asserted two of the Patents-in-Suit in this District in the *SONICblue* and *Microsoft* cases.   As a result, on balance, this factor is neutral.

### B.   The Public Interest Factors Weigh Against Transfer From The Northern District

"Public factors include 'the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'"   *Decker*, 805 F.2d at 843 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).   Three of these factors are neutral.[14]   However, California's strong interest in deciding this case and the unfairness of burdening citizens in Texas with jury duty weigh against transferring this case.

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."   *Hoffman-La Roche*, 587 F.3d at 1338.   Here, the presence of the headquarters and principal places of business of both Cisco and TiVo in the Northern District of California gives California a compelling local interest. *Acer*, 626 F.3d at 1256 ("Here, unlike the Eastern District of Texas, the Northern District of California has a localized interest in this matter.   The company asserting harm and many of the companies alleged to cause that harm are all residents of that district[.]").   Also, Cisco's

---

[14]   (1) Recent statistics show very little difference in the time to trial between the two districts and that, if anything, the Northern District of California is slightly faster in resolving cases (*see* Nguyen Decl., Ex. 18 (25.4 months in Northern District of California; 26.1 months in the Eastern District of Texas)); (2) both venues are familiar with federal patent laws (*see In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008), 551 F.3d at 1320); and (3) this case involves patent law and therefore will not involve conflict of laws or the application of foreign law.

1   assertion of the invalidity of the Patents-in-Suit calls into question the work and reputation of the

2   named inventors, all of whom reside in the Northern District of California.   Nguyen Decl. ¶ 4 &

3   Ex. 11; *Hoffman-La Roche*, 587 F.3d at 1336.

4          In contrast, TiVo does not have an office in the Eastern District of Texas, and Cisco does

5   not have an office in the Eastern District of Texas where relevant witnesses reside or that is

6   otherwise relevant to the accused Cisco DVRs.   Also, TiVo has not identified any witnesses

7   relevant to this case who reside in the Eastern District of Texas, and Cisco is aware of none.   On

8   the other hand, the majority of the identified witnesses, evidence, and events related to the

9   Patents-in-Suit are centered in the Northern District of California.   Thus, California has a

10  significant interest in deciding this case and not burdening Texas citizens with a case so heavily

11  centered in California.   Thus, these two factors weigh heavily against transfer.

12         **C.     The Balance of Convenience Weighs Strongly Against Transfer**

13         Under Federal Circuit precedent, the fact that TiVo has other patent litigations pending in

14  East Texas does not justify transferring this case out of this District, which is the most convenient

15  forum where both parties are headquartered and the key non-party witnesses reside.   *See*

16  *Verizon*, 635 F.3d at 562.   The Federal Circuit has stated that "the proper administration of

17  justice may be to transfer to the far more convenient venue even when the trial court has some

18  familiarity with a matter from prior litigation."   *Morgan Stanley*, 417 Fed. Appx. at 949; *see also*

19  *Zimmer*, 609 F.3d at 1382.   By the same reasoning, there is no justification for transferring a

20  case *from* the most convenient forum merely because the court to which transfer is sought has

21  some familiarity with the case from a prior litigation.

22         Here, the balance of all of the convenience factors weighs strongly against transfer.   As

23  previously discussed, this Court is as well positioned as the Texas Court to adjudicate this dispute

24  between Cisco and TiVo.   Moreover, any alleged economy of litigating this case in East Texas is

25  outweighed by the availability of compulsory process for key non-party witnesses (including all

26  named inventors of the asserted patents), the location of sources of proof, the convenience of

27  witnesses, and the local interest in deciding the case in the Northern District of California.

28  There is also no reason to disturb Cisco's presumptive right as the first-filed litigant.

1    **V.     CONCLUSION**

2          For the above-stated reasons, Cisco respectfully requests that this Court deny TiVo's

3    motion to dismiss or transfer.    Rather, this Court should retain jurisdiction over Cisco's

4    declaratory judgment action.

5

6    Dated:    July 3, 2012                          WEIL, GOTSHAL & MANGES LLP

7

8                                          By:    _____*/s/ Jared Bobrow*_____

9                                                 Jared Bobrow
                                                 *jared.bobrow@weil.com*

10                                               Attorney for Plaintiff
                                                 CISCO SYSTEMS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28